May it please the court. My name is Andrew Armani. I represent the appellant in this case, Ms. Faislice. By filing and successfully prosecuting a sex discrimination complaint, Faislice forced the state of Montana to do what the Constitution requires, treat female prisoners equally. As a result, she contends she was subjected to multiple acts of retaliation at the hands of four prison officials who were the defendants in this case. The district court here improperly decided the merits of Ms. Slice's retaliation claim under the guise of summary judgment. In response to the defendant's motion for summary judgment, Ms. Slice carried her minimal summary judgment burden by proffering a host of documents, affidavits, and other evidence that raised material issues of fact on each of her retaliation claims. But the district court here, improperly substituting its judgment for that of the jury, either ignored, failed to credit, or improperly discounted this evidence. Counsel, I have kind of a conceptual question for you because the way the briefs and even the original bench memo on this treated this was that each one of these incidences that she alleges is a separate claim of retaliation. And the way I would look at it is that she, in her complaint, starting from the beginning, at count two, she made a claim of retaliation for having successfully pursued this gender discrimination action. And each of these incidences that the parties are disputing are evidence as to whether or not there was retaliation. So I don't think we look at each incident separately. I think we say, did she assert a prima facie case of retaliation for pursuing her constitutional rights? I think that's correct, Your Honor. There's basically, she pled a broad claim of retaliation. In response, the defendants, they didn't file a 12-6 motion. They didn't move for a more definite statement. They kind of let that broad pleading stand. And the evidence in this, there are basically different reiterations of the same overarching retaliation claim. We believe there are multiple fact issues on this record, all of which are discussed in our brief.  I'd like to draw the Court's attention to two key issues. First, this is one of the rare cases of retaliation where the record, even at summary judgment, contains direct evidence of retaliatory intent. As this Court is aware, most cases of retaliation, even at the jury stage, have to be proved by circumstantial evidence because most defendants don't admit their retaliatory intent. But here, even at summary judgment, the record contains direct evidence. It was improperly ignored by the district court. Second, while the defendants here contend that they had legitimate justifications for the actions that they took, when the Court goes back and looks at the record here, it'll see that those justifications simply make no sense. Coming back to this issue of retaliatory intent, the record here contains as close to an admission of retaliatory intent as this Court is likely to ever see in a retaliation case. In the context of a transcribed disciplinary hearing that indisputably led to the punishment of Ms. Slice, prison officials gave as one of the principal justifications for her punishment, her protected litigation conduct. Now, the defendants point out, and correctly, that none of them personally made these statements. But in doing so, they ignore the fact issue created by the fact that two of the defendants here, Defendant Aldrich and Defendant Lusby, heavily participated and, indeed, led this disciplinary hearing. Both of these individuals silently acquiesced in these statements connecting her protected litigation conduct to her eventual punishment. They didn't speak up or reject them. And most importantly, both these defendants went on to sign the disciplinary sanction that resulted from the content of this hearing. We believe that this evidence alone is sufficient to raise the facts issue on retaliatory intent. It was improperly ignored by the District Court. Yeah, I, you know, your case is a very interesting one and perhaps a compelling one. I want to be sure we're on the same page about one thing. The, you know, it was a non-defendant, and I want to say this name right, Dolezal, if I understand the name correctly, who made the independent decision to place slice and lockup, at least that part of it. Yes, Your Honor. And I question whether the record supports a reasonable inference that Lusby acted with retaliatory intent to influence that decision. I'm just talking about the lockup portion. Do you agree with that? No, we don't agree with that, Your Honor. It's, this Court has had a very justification is itself evidence of retaliatory intent. When the Court goes back and looks at the record here, basically what the defendants say is that Defendant Lusby had to be locked down in disciplinary housing for three days because she failed to complete a so-called thinking error report, which is basically a sanction that this prison uses under their model of discipline. May I interrupt you for just a minute? Yes, Your Honor. This is a very interesting case, and this is for the benefit of the people in the program. Why don't you just tell us a little bit about the facts as we see them? Yeah, the facts of the case are this, Your Honor. Face Slice was a prisoner in the state of Montana. Speak up for the record. Excuse me, Your Honor. Face Slice was a prisoner in the state of Montana. She filed a sex discrimination complaint with the Montana Human Rights Bureau. They conducted a five-month investigation, and basically her allegations were that there was a lack of parity between the opportunities given to female prisoners and the opportunities given to male prisoners in a separate male prison. The HRB conducted a five-month investigation. What was that lack of parity? There were several things that they found, and I think we somewhat discussed exactly what the HRB ultimately determined, but the point is they found that there was disparities in the educational opportunities, in the time that these women spent on parole compared to their male counterparts, just a whole slew of things. Even the money that they could spend in the store was less than their male counterparts. And basically what she contends here is that as a result of this lawsuit, which was successful, the HRB found credible evidence that the prison had retaliated against, or excuse me, discriminated against these women along gender lines. She contends that she was subjected to multiple acts of retaliation by these same prison officials whose conduct was being investigated. But she was retaliated against by the prison authorities because she went through the Montana Human Rights Act. Correct, Your Honor. And Eula Jones Day. Yes, Your Honor. And your firm has taken this matter on pro bono. That's correct, Your Honor. That's correct. And coming back to Judge Smith's question, with respect to the lockdown claim, is there retaliatory intent here? There's two circumstances that create retaliatory intent here. First, this lockdown took place just one month after the stipulated settlement in the HRB claim was signed. That means that the preceding five months, Montana state officials were out at this prison investigating these allegations, talking to these prison officials, and basically baiting the way that they did their job, which would have led to prison officials. And second, and more importantly, it is undisputed that on this record that immediately before Defendant Lusby decided to place Slice in lockdown, she announced to the entire prison, including to Ms. Slice, at the direction of her superior officer, she announced that the sole punishment for any individual that failed to complete the so-called thinking error report, which is what Slice was charged with, would be to be placed in a regular cell for the night, not to be locked down in disciplinary housing for three separate days. And ultimately, Face Slice was acquitted of this lockdown claim because of this justification, because Defendant Lusby knew he was supposed to follow the direction of his superior officer. Instead, he went beyond that direction, beyond the generally applicable punishment, and he sought out another officer to secure a heightened punishment. Just to be sure we're on the same page here, I get your point about Lusby. It's just that I don't understand the record, and it's only with respect to the lockup. We have these other issues as well. But with respect to the lockup, my understanding is that it was Dallasall who made the independent decision to put Slice in the lockup. Is that correct? No, we disagree with that, Your Honor. The official decision was made with Dallasall. But this Court has held that if a subordinate acts with retaliatory intent and brings about a decision by a higher official that would not have occurred but for the subordinate's retaliatory intent, that that does not immunize the subordinate from acting with retaliatory intent. So we think on this record, Dulles is not a defendant, and we're not alleging that Dulles acted with retaliatory intent. What we're saying is Lusby had a generally applicable punishment she was supposed to apply. Instead of simply doing so, there's a fact issue. Why did she not just apply the punishment? Does the record indicate that Dallasall knew what Lusby had said with respect to the thinking error? It's kind of like a 1984 situation. It's not clear from the record, Your Honor, whether Dulles had knowledge of what the previous shift supervisor had said was supposed to be the punishment. For these reasons and those in the briefs, we would ask that the Court reverse the District Court's summary judgment, remand for further proceedings. And any time I have, I'll reserve for rebuttal. Thank you. Good morning. My name is Pam Collins. I'm an Assistant Attorney General for the State of Montana, and I represent defendants, appellees in this matter. I ask the Court to affirm the District Court's determination to grant the appellee's summary judgment motion. Ms. Collins, I've got a couple of questions I hope you can answer for me. I'm troubled by the fact that Ms. Slice was the only person that was transferred to what at least she certainly considered less desirable housing as a result of filing the OSHA complaint. She wasn't complaining personally that she was having problems. It was other people, but they weren't moved. That troubles me. What should I make of that fact? Your Honor, it's important to remember that Faye Slice was the only inmate that complained. I understand that, but she didn't say she was having a problem. She said that others were having a problem, and it was a problem with the facilities themselves. If they had moved everybody, I get that, but they didn't move everybody. They just moved her, and they left the other people for whom she was complaining, if you will, in the same situation. Doesn't that at least raise a triable issue of fact that somebody needs to determine? Your Honor, I think it's also important to remember that Faye Slice complained about air quality in general in the prison, but she also complained about mold in the pod that she was living in. I'm talking about the mold specifically, but there were other people that were allegedly affected by this, right? And she was complaining for them as well. We don't know. No one else complained. But she complained, if you will, on their behalf. I don't know. We have no other evidence that anyone else was affected by it, that thought they were affected by it, and we know no one else complained. Let me put it this way. In the context of retaliation, if the complainer is the only person that's moved to inferior housing, the complaint is about alleged mold and air quality and the like, and other people who really did have reactions to that sort of thing and had complained about it are left there. Doesn't it at least raise an issue about the motivation of the prison official? Your Honor, there's no evidence that anybody else had any reaction. The point is that more discovery and a hearing that would make a determination about that is what's required, isn't it? Well, Your Honor, discovery was conducted in this case. She complained. She's a smart woman and she knows how to handle herself and knows how to fill out the papers. She complained to the Montana Health Authority and she's the only one moved into what she regarded as poor quarters. It's got to raise an interest that because she complained, she's being retaliated against. Well, I don't see it that way, Your Honor. You can't reasonably move a whole prison population when no one else has stated they're affected and there's only one person. Well, let's take the second element of this that, at least in my mind, creates more of an issue. Not only was she, and I want to use the right term, phased down in the therapeutic community and transferred to this less desirable housing for one month. Now, that has nothing to do with anybody else. This is just her. I gather she was a leader, certainly a recognized person in the therapeutic group. She viewed it as being a punishment. Why was she singled out for that, if not as retaliation? Your Honor, we don't know that she was singled out. There was an inference, is there not? We do know that there was another inmate, Penny Wood, that was taken to lockdown during the general meeting for disruptive behavior. One of the problems with this retaliation claim that Slice mentions regarding the February 29, 2008 incident is that it was not raised in a way that it was developed in a district court. Yes, counsel, that's a question I have for you. That relates to a question I have for you. Ms. Slice was pro se during this? Yes. Okay. You said discovery was taken, but when I look at the record, it seems that the only deposition that was taken was of Ms. Slice, and that all the evidence that supports your position was submitted by affidavits with attachments, and those people's credibility was never evaluated in terms of Ms. Slice being able to take their deposition and get tests, their credibility and tests, the validity of their statements. Is that right? That's correct, that the only deposition taken was of Ms. Slice, and that but we, in, Face Slice did propound discovery requests upon the state and was provided probably a thousand pages or more of documents. It just seems to me that on this posture that the district court, or actually the magistrate judge made a number of findings of fact and kind of substituted himself for the trier effect. And that concerns me, given that she was pro se and how this comes to us. Well, again, I would say that Ms. Slice conducted the discovery that she wanted to. We provided all the responses that she requested. She didn't complain that she wanted more discovery, that she wanted to do depositions. That was not an issue. And so I think things were properly conducted in the court below. I would say that on appeal, Ms. Slice tries to rewrite history by linking the three allegations of retaliation she raised on appeal to her 2004 Human Rights Bureau complaint alleging sex discrimination at Montana women's prisons. However, They all occurred within an approximate period of time from that fact, did they not? That may be, but at the time that Ms. Slice complained about this retaliation, she didn't cite the human rights complaint and the subsequent stipulation as reasons for the retaliation. She didn't think that she was being retaliated for that. On what do you base that? Well, because in her taking the first incident that she... Counsel, excuse me, I'm looking at her very first civil complaint, and count two, it's labeled official misconduct, but she says in it, I have suffered prolonged and significant retaliation against me by the DOC slash MWP as a result of complaints I filed with the Montana Supreme Court and the Montana Human Rights Bureau about sex discrimination. How is that a failure to link the retaliation claim to her filing of the action against the prison? Well, this is a general claim of retaliation, but when she made her specific claims of the incidents where she felt she was being retaliated against, she did not say that it was because of the Human Rights Bureau complaint. She's a pro se litigant. I know we give a lot of... Don't we construe her complaints, if you will, liberally? Counsel, let me just quote you the remainder of that paragraph. Defendants have denied me the opportunity at pre-release placement, parole, prison employment, appropriate housing, education opportunities, vocational training programs, destroyed and or confiscated legal documents and evidentiary documents relating to human rights abuses, destroyed my personal legal work stored on a loud floppy disk and legal documents stored while I was on leave from prison to court, fired me from therapeutic community positions, placed me in lockup, fired me from prison employment and harassed me with antagonistic searches of my property, opened my legal mail, interfered and delayed the delivery of my legal mail and refused to post my legal mail. How can you get any more detailed than that? And this is the first one. This isn't even the amended one and the supplemental evidence that she introduced. Well, it isn't that detailed. They're broad categories, but when she mentions the retaliation and the instances on appeal that are raised, you can see that she did not say that the retaliation was due to the Human Rights Bureau. For example, in the first instance, on the December 2, 2006 lockup incident, in her grievance that she filed at the time this occurred, she didn't mention the stipulation, the complaint for placing her in lockup. And these grievances are exhibits H-I-N-J to Gloria Cowie's affidavit filed in the district court that's docket 68-9, 68-10 and 68-12. Who's affidavit? Gloria Cowie. And I'm sorry that was not included in the excerpt of record. I can't find it. But going to the supplement to her amended complaint that she filed in June 2007, Slice told the district court that Lusby retaliated against her on December 2, 2006 because of her off-voice criticism of the therapeutic community treatment program. In her addendum to the human rights complaint that Slice filed in late February 2008, Slice also stated that Lusby retaliated against her for her outspoken criticism of the TC program, including having placed her in lockup disobeying a direct order. Going to the second incident on March 20, 2007, with the complaint to OSHA. I don't see where you're going with this. Judge Wardlaw has read you in Haik Verba this complaint that she filed. It's extraordinarily detailed by my lights. It's a rare cause of action from somebody in jail that you see that has anything close to that level of specificity. So you're reading from these affidavits and so on to what purpose? Are you trying to convince us that what she wrote was not detailed enough? Is that your point? No, I'm trying to convince you that she at the time these incidents occurred, she did not say that they were in retaliation. That's what Judge Wardlaw just read. She did say that they were in retaliation. But not at the time the incidents occurred. She said it later in her complaint. But at the time the incidents occurred, she didn't say that. Does she have to say that contemporaneously? What case do you rely upon for that point? I think it raises a credibility issue. That's a whole separate issue and that's why they want to go to trial. There's an issue of credibility here. Well, I think it raises the issue that there's no link. There was no link established by Slice. Your point is that it's just a credibility. It's not an issue of timing. As far as I know, there's no case law that says that a complaint of retaliation must be made contemporaneous with the alleged retaliatory event. Is there? Excuse me? Is there any case law that says that a complaint for retaliation must be made contemporaneous with the alleged retaliatory event? Well, no. I don't think there's anything that says that. But if a complaint is made at the time the alleged retaliatory event occurs, you can look at the reasons given by the person who thinks they're being retaliated against for why they think they're being retaliated against. And she didn't say it was because of the human rights complaint. Well, I see. But you think she should have said it at the time they locked the doors on her? If that's what she thought, she should have said it. Could you ask her about that and when you took her deposition? I don't recall if I did or not. I was in the deposition. I was mainly trying to pin her down to what exactly her broad categories meant. When you say my mail was searched or my records were searched, when do you say this occurred? Who did it? I was trying to get her categories were very broad and they were very numerous. It was very difficult to try and pin down exactly what she was talking about so I could respond. Very difficult. She was all over the board. Well, you're beyond your time. If there's any other questions, I would ask the court to affirm the district court's granting of the summary judgment motion. Thank you. Thank you. A couple quick points in rebuttal. Judge Wardlaw, if you look at Slicer's objections to the magistrate judge's report she makes what I consider you could literally consider as a 56-F motion. With respect to the consistency in Ms. Slicer's claims, the federal rules permit my client to plead alternative claims. She can say this happened because of this or because of this. It's for the jury to decide. And finally, if the defendants here did not like the specificity of my client's complaint, they shouldn't have jumped to summary judgment. They should have filed a motion for a more definite statement, a 12B6 motion and forced her to replete her claims in a way that they understood. Thank you.
judges: Pregerson, Wardlaw, M Smith, Cjj